24-1098 Southern Iowa, Dean Naylor v. County of Muscatine, Iowa et al. Good morning, Your Honors.  Emlyn, on behalf of Dean Naylor, I'd like to reserve three minutes, should it please the Court. Title 7. You can raise that a little if it's more convenient. Thank you. Title 7 protects all aspects of religious observance and practice as well as belief, unless that belief is too unpopular or offensive. Such a proposition turns Title 7 on its head, but that's the effect of the lower court's opinion. content of Mr. Naylor's beliefs meant that actual conduct in the workplace was, to quote the lower court, immaterial. But the word immaterial better describes the two abstract hardships credited as compelling termination over toleration. Abstract harm to a public image. Abstract harm to a government relationship. Both of these hardships are legally unsound and factually unsupported by the record. This Court should reverse. I'd like first to discuss the direct evidence that establishes the Prima Fascia case, and then to address the allegation. I'd like to start with, I think, or I think you were starting, and there are exceptions to pure speech, fighting words, and so forth. Are there exceptions on the freedom, are there comparable exceptions to the freedom of religion? Central tenets of religion. Well, under Title 7, Your Honor, an undue hardship is No, I mean, I'm going back before we get to the question of hardship. To the Prima Fascia question as to whether or not something No, not just height, just as a bare question. I have a hypothetical. Let's suppose that someone comes to an army, a young man comes to an army recruiting office, fills out the application to become a combat soldier, and tells the recruiter, my ancestor organized and led the Sixth Crusade, and the central tenet of my Christianity is that Muslims should be exterminated. Does the army have to accept him? Well, I would probably go to a BFOQ type objection, but as to whether or not that What objection? Bonafide occupational qualification, because the stated belief in that hypothetical compels a certain action. Objection came up after he had gone through basic training and was ready for assignment. So as to whether or not that would qualify as a religious belief under Title 7, yes. Yes. That is a religious belief. Yeah. He says it's a central tenet. Yes, Your Honor. Yes, Your Honor. Because that would be religion protected under Title 7. However, it would almost assuredly impose an undue hardship, as in your hypothetical it compels a certain action. Why do we even have to do undue hardship analysis in that situation? It's as clearly incompatible as a societal matter as the exceptions to pure speech. Yes, Your Honor. I think your hypothetical makes the undue hardship analysis straightforward and simple. But as a matter of definition, under 29 CFR. I think a jail administrator is not too far removed. Yes, Your Honor. If Mr. Naylor had expressed a belief that compelled discriminatory actions, that would be disqualifying. However, that is not on the record. The record shows. Wait, wait, wait.  No. My hypothetical didn't involve that. I understood your hypothetical to say that. Yeah. He just tells the Army that if I go into combat and there's a Muslim around, I'm going to kill him. Your Honor, if that was the belief that. That was a central tenet of his Christianity. Yes, Your Honor. I would take that to be compelling a certain action contrary to the workplace obligations, the Army obligations. There is no such comparable belief on the record. Put him in the motor pool. Your Honor, if I may, there's nothing on the record to suggest that Mr. Naylor held religious beliefs that compelled discriminatory action. He has a tenure that shows he never engaged in any substantiated misconduct towards any inmate on the basis of religion or otherwise.   That, if I may, Your Honor, that's stipulated by the county on pages 740 and 741. That throughout his entire tenure, there was never, never an incident of workplace discrimination either against an inmate or an employee or a member of staff or a member of the public. What if someone had made some of the statements that have been highlighted? I understand that the Google Doc is several pages, but it appears that the parties are focusing in on certain comments. What if those comments had been made by a jail administrator who did not attribute them to religious belief? They would not be protected under Title VII, Your Honor. So the jail could fire that person, but because it's attached to religion, they cannot fire Mr. Naylor? Well, it wouldn't be an issue under Title VII. You may have a First Amendment issue, a free speech issue, but as regards to Title VII. I understand it's not Title VII, but I'm just trying to get to the concept of whether it's – it wasn't about the rapture and, you know, those sorts of detailed descriptions of that, you know, look pretty much based in a religious belief. It was just – it was certain statements about persons in populations that the jail regularly sees. And I'm just trying to figure out if there's something there that – that there's just parts of that that the jail just can't handle. The rest of it, fine. You know, the religious belief is your religious belief, but when it actually affects the folks in the jail, and it's kind of a – maybe a corollary to Judge Loken's question. Yes, Your Honor. I think – first, I would note that it's on the record, pages 736 and 737, that the county admits without qualification that the Bible doc is a biblical and subjectical statement that as a whole describes Mr. Naylor's religious belief. Right, right. And I'm not – and I'm not pushing back on that. I think I have no reason to disagree with that. I'm just talking about the portions of it. Taking out those portions that the county seemed to believe got in the way of anyone's ability to operate a jail that serviced folks in those populations. Yes, Your Honor. The three statements that were selected by the county and put into the discipline narrative, and on page 29 of their brief to this Court, the county states the discipline narrative provided the quote, basis for termination. That contains three quotes. Each of those quotes reference, in order, the devil, Satan, and scripture. The attempt to parse and slice actual sentences to carve up and find a post hoc justification for termination on the basis of religion is contrary to Title VII. And there's a fundamental problem in the attempts to tweeze out words or phrases that will qualify sufficiently unreligious in order to justify termination. Was it on the record that – I think it was – that Mr. Naylor felt that part of his religious beliefs compelled him to distribute this document? It is stipulated on the record. And now it was distributed, what, maybe 10 years ago? It was in 2013, yes, Your Honor. Is there anything else after that? Any other documents or any other – I guess I'm not really sure how this Google Doc lives out there and what that means to distribute, by means – by way of distribution and Google Doc. But is there anything more in the record about the effort to get it out there to people, either in 2013 or afterwards? It was posted in 2013 and publicly available, as best as the record shows. He made YouTube videos that the county describes as evangelical in 2014 and 2015. Those were not cited in that discipline narrative, the basis for termination. They weren't raised by the county as a basis for termination. It was those three specific sentences from the Bible Doc referencing Satan, the devil, and scripture. And I would point out, this is in our brief, but the attempt to remove or surgically extract the religion from his beliefs is fundamentally incompatible, both with the statutory definition of what constitutes a religious belief and also this Court's ruling most recently in Ringhofer v. Mayo Clinic. This Court said that overlap between a political belief and a religious belief does not remove it from the protection of Title VII. If we do get to the undue burden part that the district court analyzed, and you've put them into two buckets, one, the relationship with the marshals, Johnson County, but also I think it's been described sort of as public image, or I would say maybe I read it as more his ability to interact with all members of the community that come through the jail. Is it your position that that is never enough for an undue burden, or is it your position that they just haven't shown enough here? With respect to the public image objection, on these facts, Your Honor, it's simply not there's no evidence of an actual disruption to the workplace, and that's our position, is that in 585 of the record and 586, it shows that both before and after the article in April describing Mr. Naylor's religion, there were no disruptions. No employee, no member of staff, no inmate came forward and said, actually, I do have. Why is that necessary? Because in order to justify... For a government agency where the respect and support of the public is obviously essential, why do we have to have co-worker disruption and so forth? Well, it needs to establish an undue hardship, Your Honor, and a hypothetical hardship, as this Court said in Griffith, as this Court said in Brown v. Polk County and again in the original, undue hardship cannot be established by opinions about hypothetical facts. Would it be... I'm sorry. I'm good. Is it a hypothetical, though, I mean, I think I understand the way you're using hypothetical because I think it's sort of the flip side of your coin of, well, there's been no disruption, but as I'm understanding the public image, there is, we can't have, this is the position that we can't have a leader in a governmental agency, this office, that has views so negative of the folks they service. Like, let's say it was the Social Security Administration and the person who are dealing with those, with the folks coming in who have some kind of disability, that the leadership makes public, vitriolic statements about folks with disabilities. Your Honor, we don't, Mr. Naylor does not object to the public interest in public efficiency and the efficiency of delivery of public services. The issue here is that the evidence cited by the lower court, and this is outlined in our brief on page 29, the harm to the public image all focuses squarely on Mr. Naylor's religion, on his religious beliefs, and in Groff, the Supreme Court very directly stated that animus towards religious expression, animus towards religious belief cannot, cannot be departure. In my hypothetical, what if it was based in religion? Sorry, go ahead. The Social Security Administration example. I mean, I think that the answer, your answer to my question is coming back to the religion, and I understand that that's what this case is about, but the focus of my question is, is it really hypothetical to say that this kind of public presentation from leadership would cause the community to question the ability of that agency to do its job? When that questioning is rooted in prejudice against his religious beliefs, when he has a track record that shows that for almost a decade he never discriminated against any individual, there's no substantiated complaint against him for over a decade, when the objection is purely based on dislike of religious expression, that is directly disregarded and discounted and not allowed based on Groff at 472. Justice Sotomayor was so concerned about this, she repeated that warning in her concurrence at 476, that animus against a protected group, animus against religion and religious belief cannot, cannot qualify as an undue hardship under any anti-discrimination statute. And I appreciate, Judge Kelly, that this court, that this case does come down to protection of religious belief, but if offense, if dislike of religious expression qualifies as undue hardship, then to quote Groff, Title VII is truly at war with itself. I'd like to reserve my time. Thank you. Ms. Flaherty-Tarpey. May it please the Court. Counsel. My name is Kasey Flaherty-Tarpey. I'm here with my colleague, Kaitlin McCullough from Denton's Davis Brown, for the Apolli Defendant Muscatine County, Iowa. This is an employment law case where the public employer, a county jail, fired their at-will employee, the jail administrator. The district court's ruling dismissing Mr. Naylor's one-count petition for Title VII religious discrimination should be affirmed because undue hardship is dispositive of this case. The county could not have accommodated Mr. Naylor or his online commentary absent undue hardship. With or without a prima facie case analysis, this court can affirm the ruling because the outcome does not change. There is undue hardship under the standards set forth in Groff v. DeJoy. The Groff court did not write on a blank slate. Instead, it focused on the plain definitions of Title VII, which is what the district court's ruling did as well. If it is undue hardship, if the burden of granting an accommodation would result in undue hardship to the conduct of the particular business. This requires courts to take into account all relevant factors in the case at hand, including the particular accommodations at issue here, which to be clear, Mr. Naylor requested none during his time with the county. But now in his briefing, he says simple tolerance is sufficient, so carte blanche for an employee to say and do whatever without regard to their employer. The practical impact of that in light of the nature... I guess it's certainly implicit that the accommodation that he wanted was to be let alone to say what he wants to and not be fired. I mean, I don't understand why you don't think there's sufficient showing here of a request for an accommodation. Well, here, Mr. Naylor, again, this is undue hardship for the county because he is saying I should be allowed to say whatever... Well, that may be right, but undue hardship, it seems to me, is the difference. That assumes that there's some accommodation that's being asked for, does it not? Simple tolerance is no accommodation at all, respectfully, Your Honor. So you're saying that's the end of the case? He never asked for an accommodation, so it's over? Not necessarily. It's just an ultimatum. It's an ultimatum to an employer that they must do exactly what the employee wants to do as an accommodation, whereas that's not how the accommodation standard works. It is a conversation. But there's no accommodations requested. That's the end of the case, isn't it? So you're surely not suggesting that, are you? No, Your Honor. I'm saying that here we're looking at the fact that Mr. Naylor is looking at carte blanche or requesting carte blanche to say and do whatever he wanted. And in the practical... Not whatever. What he did do. Yes, sir. What he did was say that he wanted an imminent violent war, which is a problem as a jail administrator. I think that's a matter of some contention. And what about his position that the jail is just simply saying, no, that's just going to be too much trouble. I don't even know if they identified the populations within the jail. I mean, when does that kind of assertion of, no, we can't have that kind of thing here, sort of bleed into a religious discrimination of, we don't like that here. I don't know that it's hypothetical, but does the jail have to put on some kind of evidence to describe the nature of their business and the people they service and why these kinds of statements are particularly problematic in this particular business environment, which is what the Supreme Court has focused on? Of course. And the county has done that in the record based on the unique nature of a jail. The jail administrator, his job description is in the record and his testimony from his deposition. He is in charge of the day-to-day functions of the jail. Not only does he create policy, he implements them. And he is in charge of making sure inmates get kosher meals. If they request a Bible, Mr. Naylor is in charge of making sure they get a Bible. And as Naylor testified, the jail administrator also annually drafts the budget. He was the one who creates the budget and sends it to the sheriff. So he is the most uniquely or the best situated, rather, to know the financial status of the jail. Well, that's bleak. I think the two buckets sort of make sense to me. The image, sort of why we, the argument we can't have these kinds of comments coming from our leader in this business, in this operation we've got, versus if we have our top administrator making these statements, we're losing the United States Marshals, we're losing the Johnson County. Those seem to be two different kinds of harms. Am I wrong about that? No, I agree, Your Honor. They're both economic and non-economic costs, which remain relevant to the undue hardship standard under Groff. And the public image is one of those non-economic costs. Again, we have a county jail. Impartiality is critical. The view of the public to have trust in their county jail, critical to the operation of the jail. The imminent loss of revenue that was communicated, that is the economic cost, where Mr. Naylor, just three months after his termination, wrote in an email that the jail would have lost 80% of their funding, or approximately $5 million. And that is... Is that, it seems to me that there would be dollars from, that could have been calculated. In other words, the United States Marshal Service has regular contracts with local, with jails in the community. Those numbers are pretty easy to get, or to get the marshal to, or a deputy to come and say, yes, we would, in fact, terminate these. But I don't think there's anything like that in the record, is there? There's not. Instead, we used the person who created the budget themselves. Mr. Naylor is essentially not an expert, but he is the best situated to talk about the budget. But he didn't say, my statements will cause the jail to lose 80% of, right? He's saying, if the marshals were to walk away, we would lose X percentage. But isn't there a missing step in there? Not necessarily, Your Honor. Mr. Naylor concedes at his deposition that that type of loss is exactly what you would think about as a jail administrator. And he talks about how it's not a hypothetical loss, given what he wrote in a 2020 cover letter, that the U.S. Marshal Service was the county's largest client, and he boasted that they were the second largest holder of marshals inmates in Iowa. And he goes into detail in the record, Appendix 375 and Appendix 382, how important it was to keep the Marshal Service happy. But what if there's nothing in the record that says the marshals had plans or imminent plans or were likely to terminate the contract? We believe Sheriff Ryan's testimony supports that as well as... Do you think that's enough, the one phone call? There were two phone calls, Your Honor. But either way, one phone call threatening the majority of the budget is critical. And Mr. Naylor appreciated that those communications were critical. And Johnson County only sent one letter. But regardless, at their board meeting, they said, come to the next board meeting with a plan to transfer our inmates, which, as far as government goes, is as fast as you can pull inmates from a jail. The process is not necessarily fast. And even still employers need a flexible standard. They should not and need not feel the impact of losing a majority of their budget. This would make the undue hardship standard under Groff unworkable for employers and would render the analysis under Groff useless if it requires the employer to actually suffer a potential loss that could damage their business or permanently end it. And as a result, again, just on the economic hardship alone, Mr. Naylor's case would never make it to a jury. As to the non- I'm sorry. I'm sorry. I beg your pardon. But surely there has to be some reasonable possibility at the very least or some kind of probability, some fair probability at least, of these kinds of difficulties and problems arising before you would be privileged to do what you did. I mean, a mere speculation won't do it. But, I mean, what's the collection of words we're supposed to use here with respect to the eminence of sufficiently untoward consequence? One example in the Johnson County letter demonstrates that they said, we do not think that Mr. Naylor should continue as jail administrator. And if he does, we think that we will pull our inmates from the jail. I think the question is the legal standard. And then you're about 90% likely to say a standard that is fact that requires submission to the jury. I think that Sturgill is a good example of comparison here, where Sturgill, the employer, did not have those conversations. Sturgill, the employer, just assumed that there would be- You don't have an answer to the, you know, reasonable possibility, fair probability. We've got all these different standards floating around in civil rights-type statutes and issues. What is it here? I think the case law that we've cited for Virts in the Fifth Circuit, Draper in the- Virts is fifth, I apologize. Draper is sixth, and Firestone is fourth, where employers do need a flexible standard where they can demonstrate that the hardship was imminent. So it's a jury question. No, Your Honor. Those were decided on summary judgment, as this case should be here. And for the public image issue, again, the district court correctly found that this was dispositive, given the interest of a county jail. We have Mr. Naylor, who attempts to confuse public image with an argument for customer preference as discrimination. But there's no evidence in the record that anyone communicated concerns that Mr. Naylor was a Christian. The concerns was that he thought there would be a violent, imminent war, where he encouraged everyone to pick up arms and prepare for beheadings. And the YouTube videos that he has published, which are live, that talks about how he does not think other religions, including Mormons, should have their own books, as well as information that Catholics are abominations. And so from the public impartiality portion, the public could no longer trust a jail administrator who is discriminating or seems to discriminate against people who are not himself. And the record demonstrates that. Seems to discriminate. That's a big jump from words on a post. Not necessarily, Your Honor. Again, it's his online conduct. How many years did he have the job? And there's no evidence that he did discriminate against any of the people that his posts criticized, who were in the jail. Plaintiff was not entirely correct in that statement, Your Honor. There's actually facts and evidence that Mr. Naylor was the subject of many lawsuits, including one where an inmate said they were not provided with a Quran. And, of course, Were they in the record? Yes, Your Honor. What was the one? I'm sorry. You said including one what? One where an inmate alleged that they were not provided with a Quran. And also, as Mr. Naylor was being terminated during that process, there was also a civil rights complaint from the state of Iowa where a female employee said, Mr. Naylor discriminated against me and said that because I am a woman, even if I am educated, I cannot hold opinions. There's actually quite a bit in the record to demonstrate that there were problems. Where do we find those? I do not have a direct site to those in particular, but I would. Well, how did they come? These aren't depositions. These were in the depositions. But were those complaints denied? What was the result of those complaints? How did they come out? The result of the matter with the Quran included the inmate, I think, was pro se, and I think that that matter got dismissed on pleadings. The outcome of the civil rights complaint was a settlement where the county was forced to settle. I'm sorry. I didn't hear what you said. The outcome of the first case was? I believe it was dismissed. I believe the minister was pro se. Also, during the investigation. I mean, jailers get these kinds of complaints all the time. It's part of the grist of the mill. We have cases like that all the time. And most of them, well, in any event, there doesn't seem to be any kind of beginning of a pattern. That's true, but as the district court found, none of those issues were why Mr. Naylor was terminated. Instead, it was what triggered the event was the public's finding of those online articles, and then the undue burden isn't measured in one day. Instead, the county learned of his online conduct, and it was weeks as Naylor continued employment, because, again, the county did not take issue with his religion. Even if it was fringe, the problem was money, and Mr. Naylor himself wrote that in his e-mails. He appreciated that it was all about money and politics, and that is exactly what Mr. Naylor's videos and blog posts demonstrate, sociological and political ideologies. And the county, again, did not care if he was Christian or not. Naylor, of course— Some of the public statements, I think, that were generated after the publicity began could be interpreted as being antagonistic to Mr. Naylor's religion. And so, I mean, if that's part of the mix of public image problem, then I think that's a difficulty for you. I disagree. I think that the record demonstrates one quote, which is the county should, quote, be concerned about the safety of the inmates in their care. Well, that was one quote. There's a lot of other stuff. I see my time has run, Your Honors. May I briefly conclude? Yeah. The undisputed facts provide Naylor's own words, establish undue hardship. He attempts to have self-serving speculation to create a fact dispute with himself. Groff's context-specific standard, coupled with Naylor's words, demonstrate there was no accommodation that Naylor could be provided absent undue hardship, and we ask that this court affirm the ruling. Thank you. Thank you. I'll give you a minute for rebuttal. Oh, no, you've got a minute. She was slow with the light flash. Thank you, Your Honors. To address a couple of points in quick succession. First, as to the question of imminence and whether or not you can find a substantial hardship as a matter of law, the Firestone case, the Fourth Circuit case, and the two precedents that this court cited, Cook v. Chrysler specifically, those all involve collective bargaining agreements. Whenever this court has found undue hardship as a matter of law and not required submission to a jury, that has always been in the context of the CBA, which, of course, we do not have here. With respect to the court about it all being about the money, I refer this court to page 379 in the appendix. That was in reference to Mr. Naylor's attempts to finance this case, not his commentary that he was terminated as a matter of money. He says specifically on that same page, 379, that his religious beliefs were being trampled. And finally, I would say that it's a factual dispute as to whether or not there was a public image issue. The argument that on the basis of his religious beliefs alone, and the county concedes again that there was no finding of workplace misconduct ever. And I would also actually refer this court to page 741 with respect to the Morgan Brown case. The county there admits on the record that there was no finding of fault with respect to Mr. Naylor in that issue either. And on pages 740 and 741, they admit there was no workplace misconduct. And on that basis, Your Honors, we submit that religious belief in and of itself cannot be disqualifying. Now, why wasn't there an accommodation exercise here as our case law requires? Oh, my time has run, but to answer your question, Your Honors, you are correct that there should have been an accommodation consideration. And at page 482, Mr. Naylor himself actually offered to speak to Johnson County if there was a legitimate concern about safety and not just objections to his religious beliefs. It's also on the record. That's a little different than a plaintiff requesting an accommodation or the lawsuit claiming a failure to accommodate. Then there's a process that our cases lay out. And this one, it seems to me, would need that process. Instead, we just have the only accommodation acceptable is to tolerate my views, my published views. Well, if I may answer, Your Honor, firstly, in Brown v. Polk, this court found – I don't want case law. I want a response to this situation. Yes, Your Honor. In this specific situation, there was no workplace conduct. There was no workplace policy that violated – that conflicted with his religious beliefs. It stipulated – He's responding to an adverse employment action. He's suing. Yes, Your Honor. He was terminated – An accommodation is part of these lawsuits. Yes, Your Honor. He was terminated because of religion, not because of any workplace misconduct or conflict. All right. Forget it. You don't understand my question, or I'm not stating a legitimate one. Well, I think you said in your brief that his accommodation was to be left alone. Yes, Your Honor. That's all he wanted was to be left alone, is not to – With his stuff staying online. He was – With the Google Docs staying out there. If I may, he was never asked to remove it. That could have been part of an accommodation discussion. It's on the record that there was no attempt to accommodate him. And at 592, it was suggested that additional training might have been – I think the plaintiff in our circuit has quite a burden to trigger the accommodation process. I'm sorry, Your Honor. I think the plaintiff has the burden in our cases to trigger the accommodation process. And then the employer has a duty to respond. If I may, the case – That wasn't done here, was it? No. All right. That's the case. That's the record. The significance of that, we'll have to see. I would refer to Brown v. Polk again. That says that it's a bilateral cooperative arrangement. Of course. The question that – but we have talked about who's got the burden of going forward, who's got the burden of proof, et cetera, et cetera. Yes, Your Honor. And that we have an empty record here. So, you know, that's either – That's good or bad for somebody. The usual accommodation difficulty arises when somebody is wanting, for instance, to take off work or not be – not have to attend certain kinds of classes or that sort of thing. And that's not – it's not clear to me that this accommodation difficulty is really a fit for this case. But as you – I think you said in your brief, his accommodation was simply to be left alone to practice his religion. I don't – but anyway. We will rest on a – Thank you, counsel. – direct evidence. Thank you, Your Honor. The case has been thoroughly briefed. An argument's been helpful. An unusual situation. We'll take it under advisement.